WILLIAM FORSYTH *vs.* HENRY N. HOOPER & others.

Upon the report of a case for the determination of the full court whether the jury were war-
ranted in finding the verdict which was rendered therein, the weight of the evidence will
not be considered, but the only question is whether there was any evidence upon which
the jury could legally have found their verdict.

If in an action to recover damages for a personal injury received in consequence of the neglect
of the defendants' servant, there is any evidence tending to show that the person whose neg-
ligence is complained of was not under the control of the defendant, but was employed by
one who had entered into an entire contract with the defendant to do certain work for a
stipulated sum, so that the legal relation of master and servant did not exist between
them, this court will not, upon a report of the case, set aside a verdict for the defendant,
although the weight of the evidence may appear to have been in favor of the plaintiff.

TORT to recover damages for an injury sustained by the plain-
tiff in consequence of being struck by a chain thrown from the
tower of the church in Arlington Street in Boston.

At the trial in this court, before the chief justice, it was ad-
mitted that at the time of receiving the injury the plaintiff was
in the exercise of due care, and that the chain was carelessly
thrown from the tower of the church by a person engaged in the
work of hoisting a chime of bells to their places; and it ap-
peared that the defendants agreed in writing to cast the chime
of bells for the proprietors of the church, and properly to hang
and place them in the belfry of the new church in Arlington
Street, and to furnish all the materials and work necessary there-
for. Henry N. Hooper, one of the defendants, was examined as
a witness, and a portion of his testimony in chief is recited in
the opinion. The rest of the evidence in the case was also re-
ported, together with the cross-examination of Hooper; and the
plaintiff contended that from all the evidence it was apparent
that the defendants retained the efficient control over the hoist-
ing of the bells to the belfry, while the defendants insisted that
they had surrendered the charge of this part of the work to one
Leonard, under the contract testified to by Hooper, and recited
in the opinion. The evidence is not stated here, because the de-
cision did not rest upon the weight of it.

A verdict was returned for the defendants, under instructions
which were not excepted to; and the case was reported to the

whole court, that the verdict might be set aside, if upon the evidence the jury were not warranted in finding a verdict for the defendants.

*T. Willey & A. S. Wheeler*, for the plaintiff. In this case, no fact was in dispute. The whole evidence was reported, and nothing was left except the purely legal question whether upon all the facts the defendants were liable. And upon these facts, the relation existing between the defendants and the person who raised the bells was that of master and servant. *Brackett* v. *Lubke*, 4 Allen, 138, and cases there cited. *Earle* v. *Hall*, 2 Met. 353. *Randleson* v. *Murray*, 8 Ad. & El. 109. The test is, had the person employed the absolute and efficient control and direction of the work, so that the employer could not interfere? And if not, the question whether the employer actually exercised any direction or control as to the manner of hoisting is immaterial.

*G. O. Shattuck*, (*H. W. Paine* with him,) for the defendants.

Colt, J. The plaintiff makes no objection to the instructions given to the jury in this case, but contends that all the evidence submitted to them would not warrant a verdict for the defendants. A motion to set aside the verdict as against the weight of evidence would ordinarily be resorted to for relief, in a case where the jury, under proper instructions, had failed to appreciate the evidence, and had rendered a verdict manifestly erroneous upon the facts presented. A party may, however, take objection in the form here chosen, and submit the verdict to the revision of the court, upon a report as a question of law. The question thus presented is quite different from that which would have been raised upon a motion for a new trial. In the latter case the inquiry would have been, whether the verdict was so manifestly against the weight of evidence as to require that it should be set aside. In this case it is, whether there is any evidence, however slight, even though contradicted and controlled by other evidence in the case, which could properly be submitted to the jury, and upon which they could legally find a verdict for the defendants. The verdict in this case may be manifestly against the weight of evidence, and yet the plaintiff may not be entitled upon this report to have the verdict set aside as a

matter of law. *Chase* v. *Breed,* 5 Gray, 440. *Polley* v. *Lenox Iron Works,* 4 Allen, 333. *Denny* v. *Williams,* 5 Allen, 1. *Reed* v. *Deerfield,* 8 Allen, 522. Indeed, the question now presented is analogous to that which arises on a demurrer to evidence, a proceeding never common in Massachusetts, but which may be referred to as illustrating the point. In *Copeland* v. *New England Ins. Co.* 22 Pick. 135, Morton, J., in a learned discussion of such demurrer, says : " It seems to have been supposed to be an admission of the truth of the evidence, and the court have been called upon, supposing it all to be true, to determine what inferences may be drawn from it, and whether it would be competent for the jury upon it to find a verdict for the plaintiffs. And it has been argued that if we would set aside a verdict found for the plaintiffs on this evidence, we must render judgment for the defendants on the demurrer. But we think this is a mistaken view of the subject, and fails to give to the demurrer its legal effect. It leaves it to the court to draw inferences from the circumstances proved, and to judge of the weight of the evidence, which would be trenching upon the province of the jury. . . . . The true question always raised by this kind of demurrer is, not what it is competent for the jury to find, but what the evidence tends to prove."

So in this case the only question is, whether there is any evidence proper to submit to the jury as having a tendency to support the legal proposition which exempts the defendants from liability.

In general, the master is liable in law for the negligence of the servant, through whom, in legal contemplation, he is said to act, while in his employment. When, however, the person employed is engaged under an entire contract, for a gross sum, and in an independent operation, not subject to the direction or control of his employer, the relation is not regarded as that of master and servant, but is said in modern phrase to be that of contractor and contractee ; and the negligence of such contracting party, or of his servant, cannot be charged upon him for whom the work is contracted to be done. The question in these cases, whether the relation be that of master and servant or not, is

determined mainly by ascertaining from the contract of employment whether the employer retains the power of directing and controlling the work, or has given it to the contractor. *Hilliard* v. *Richardson*, 3 Gray, 349. *Linton* v. *Smith*, 8 Gray, 147. *Brackett* v. *Lubke*, 4 Allen, 138.

In this case, it seems to us there was evidence, proper to go to the jury, that the plaintiff's injury was caused by the negligence of one who did not sustain the relation of servant to these defendants, and for whose acts they were not responsible. It is found that the injury was caused by the carelessness of one engaged in the work of hoisting the chime of bells, and Mr. Hooper, one of the defendants, among other things testified as follows: " I contracted with Mr. Leonard to hoist the bells ; he to furnish all the hoisting apparatus and all the labor necessary to place them in their places, for which we were to pay him fifty dollars. We did nothing about hoisting the bells ; Leonard's duty was to hoist the bells in the tower. If in hoisting the bells Leonard was careless, my men could not interfere ; could not direct the mode of hoisting." There was *evidence of other* witnesses tending to prove that Leonard and his men had exclusive control of hoisting the bells, and that none of the men in the immediate employment of the defendants took charge with reference to fixing the tackle or fastenings, or hoisting the bells.

There were other expressions of the witnesses and other evidence from which it might fairly be argued that those engaged in hoisting the bells were in fact under the direction and control of the defendants. But we are not required to examine all the evidence with a view to reconcile or explain it. To do this would be to invade the peculiar province of the jury. It is enough that there was some evidence proper for the consideration of the jury, from which it might be inferred that Leonard and his men, in hoisting these bells, carried on an independent employment, in pursuance of a contract with the defendants to do a specified work for a stipulated price, and that the power of directing and controlling the work was parted with by the defendants, and given to Leonard, the contractor.

The verdict upon this evidence cannot as matter of law be pronounced unwarranted.        *Judgment on the verdict.*